UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JENNIFER CHALK                                                          Plaintiff

v.                                                      Civil Action No. 3:25-cv-133-RGJ

LIFE INSURANCE COMPANY OF                                            Defendant
NORTH AMERICA

* * * * *

**MEMORANDUM OPINION & ORDER**

This case arises under 29 U.S.C. § 1132(a), the enforcement provision of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff Jennifer Chalk ("Chalk") alleges that Defendant Life Insurance Company of North America ("LINA") wrongfully denied her claim for long-term disability ("LTD") benefits, including by failing to render a decision within 45 days. [DE 1]. This Court previously ordered this matter remanded to LINA for completion of the administrative process. [DE 17]. Chalk now moves to "reopen this case as it relates to her [LTD] claim and establish a schedule to resolve her benefits claim, including any additional remedies available to her." [DE 25]. LINA responded [DE 30] and Chalk replied [DE 31].  Also before the Court is Chalk's Motion for Attorneys' Fees and Costs. [DE 24]. LINA responded [DE 26] and Chalk replied [DE 27].  These matters are ripe. For the reasons below, Chalk's Motion to Reopen and Establish Briefing Schedule [DE 25] is **DENIED** and Chalk's Motion for Attorneys' Fees and Costs [DE 24] is **GRANTED in part and DENIED in part**.

## I.      BACKGROUND

On October 27, 2025, the Court remanded this matter for "to LINA for a full review consistent with the terms of the policy." [DE 17]. Subsequently, on November 13, 2025, LINA sent a letter requesting additional information related to Ms. Chalk's LTD claim. [DE 25-2]. The

1

letter informed Chalk that "[LINA] must receive this information by December 13, 2025. At that time we will proceed with our review based on the information on file." [*Id.* at 298]. In addition to updated medical records, LINA requested "An updated, signed Disclosure Authorization form[;] Completed Disability Questionnaire[;] Signed Reimbursement Agreement form[;] Valid proof of age, such as a copy of your Driver's License or Birth Certificate[;] Proof of Social Security Disability Benefit application and current status[; and] Signed SSA 3288 Consent for Release of Information form." [*Id.* at 299]. Chalk's counsel responded to LINA's letter on November 21, 2025, by providing the requested documents and information. [*Id.* at 300].

On December 8, 2025, LINA contacted Chalk's counsel to request that she submit to an "Independent Medical Evaluation" ("IME"), arranged by LINA:

> We have reviewed the information on file, and at this time, we have determined your client's participation in an Independent Medical Evaluation (IME) may help us to make a decision on the claim. W[e] will not proceed with the scheduling of this IME until we receive your written response confirming your client's willingness to attend the examination. This examination is performed at no cost to your client, coordinated by a company independent of New York Life Group Benefit Solutions, and performed by professional medical staff. . . . Participation in an IME may help us clarify your client's functional abilities and determine whether they qualify for Disability benefits. Please confirm that your client is willing to attend this Independent Medical Evaluation and we will proceed with scheduling the examination.

[*Id.* at 302]. Relevant here, Chalk's LTD policy provides that "The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require." [*Id.* at 303].

Chalk, via counsel, denied LINA's request for an IME on December 10, 2025, claiming that LINA had failed to provide any "information regarding the location, the date, or any physician for an IME," and "[a]s such, it is impossible for Ms. Chalk to respond." [DE 25-2 at 304]. Chalk also took the position that her claim was no longer "pending" because LINA "denied Ms. Chalk's

claim—through its failure to render a timely claim decision" and thus LINA was not entitled to an IME because it was "in effect doing an appeal review." [*Id.*].

On December 16, 2025, Chalk filed the instant motion to reopen the case, claiming that LINA had failed to seek an extension to seek the IME and that LINA's deadline to respond had passed on December 11, 2025.

LINA responded to Chalk's letter on January 6, 2025. Specifically, "LINA notified Plaintiff that the IME was scheduled for January 22, 2026, and provided the examiner's name, address, phone number, and time for the examination." [DE 30 at 362 (citing DE 30-4 at 396–97)]. LINA represented in its response that, "[r]egardless of whether [Chalk] attends that examination, LINA intends to issue its initial claim decision by the time the deadline runs under the claims-procedure regulation." [*Id.* at 363].

On April 10, 2026, pursuant to this Court's order [DE 32], the parties submitted a joint status report [DE 33]. According to the report,

> On February 6, 2026, [LINA] sent a letter dated February 4, 2026. The letter advised [Chalk] her claim had been approved for a *fixed* period of time—October 28, 2024 to January 20, 2025—but the claim was denied thereafter.

[*Id.* at 444]. The letter was attached as Exhibit 1. [DE 33-1 (the "Decision Letter")]. The Decision Letter appears to deny Chalk's LTD claim on two grounds. First, LINA's "Medical Director opined that . . . from January 21, 2025, onward," certain medically necessary restrictions and limitations were deemed "reasonably supported" but that "these medically necessary restrictions . . . were consistent with the demands of [Chalk's] regular occupation as an HR Systems Manager." [*Id.* at 453–54]. Second, Chalk "failed to attend [the] scheduled IME." [*Id.* at 454]. LINA attempted to reschedule the IME on several occasions but received no response. "As a result,

3

[Chalk's] non-attendance at the IME and lack of communication [were] considered a failure to cooperate with the reasonable administration of [her] claim." [*Id.*].

## II.    DISCUSSION

### A. Motion to Reopen

Chalk and LINA disagree as to what remedies are available to Chalk in light of LINA's denial of her LTD claim. Chalk takes the position that "LINA's decision was due no later than January 25, 2026—ninety (90) days from the Court's remand order." [DE 31 at 445]. Because LINA failed to meet this deadline, Chalk contends that the appropriate remedy is to "reopen the case for discovery and briefing on the merits as to the remainder of her past-due benefits and other appropriate relief." [*Id.* at 445]. LINA responds that Chalk's opinion is based on the application of incorrect deadlines under ERISA. [*Id.* at 446 ("Plaintiff's position regarding the timeliness of LINA's letter assumes that the claim was remanded only for a review on appeal, but . . . the Court's order for remand required 'a full review consistent with the terms of the policy,' not to treat the remand as an appeal.")]. Instead, LINA argues, the applicable claim deadlines are set forth in 29 C.F.R. § 2560.503–1(f)(3) requiring notice of determination within 45 days, with two potential 30-day extensions.

As an initial matter, LINA is correct that the Court's remand order did not instruct LINA to conduct an "appeal" of Chalk's claim. The order was clear. Although it was undisputed that "LINA failed to issue notice of its decision regarding the claim within 45 days, in violation of 29 C.F.R. § 2560.503–1(f)(3)," the Court found that the failure was due to a procedural mistake of one of LINA's employees and that, as a result, the initial review of Chalk's LTD claim was never conducted at all. [DE 17]. Adopting the reasoning of *Hackney v. Lincoln Nat. Life Ins. Co.*, No. 3:11-CV-268-TBR, 2012 WL 13343 (W.D. Ky. Jan. 4, 2012), the Court determined the

4

appropriate remedy was to remand the matter to LINA "for a full and fair review of Chalk's LTD claim consistent with the terms of the LTD Policy." [*Id.*]. Indeed, it appears that Chalk also understood the Court's remand to require an initial claim review. In the motion to reopen, Chalk claims that "Pursuant to the Department of Labor Claim Regulations ('DOL Regulations'), LINA was required to render a decision on Ms. Chalk's LTD claim within forty-five (45) days." [DE 25 at 256 (citing 29 C.F.R. 2560.503-1(f)(3))].

Nevertheless, in her Reply, Chalk reverses course by arguing for the first time that the ERISA regulations for appeals govern the Court's remand. Chalk relies on *Bustetter v. Standard Ins. Co.* for the proposition that "[m]ost courts to have considered the issue have held that this timing rule applies . . . after a court-ordered remand." 529 F. Supp. 3d 693, 701 (E.D. Ky. 2021). In that case, however, the court ordered remand came after plaintiff had exhausted his administrative remedies, including an administrative appeal. *Id.* at 698. Chalk's reliance on *Spears v. Liberty Life Assurance Co. of Bos.*, is similarly misplaced because there, the court held that "all ERISA claim procedures, including claim processing deadlines, applied to the Court's . . . remand." No. 3:11-CV-1807 (VLB), 2019 WL 4766253, at *29 (D. Conn. Sept. 30, 2019).

Here, LINA never conducted an initial review and thus there was no initial claim determination for Chalk to appeal. Each of the cases cited by Chalk were remanded *after* the plan administrator had rendered an initial decision. *See Robertson v. Standard Ins. Co.*, 218 F. Supp. 3d 1165, 1167 (D. Or. 2016) (plaintiff initiated ERISA action after "Defendant . . . terminated Plaintiff's long-term disability (LTD) insurance benefits"); *Solnin v. Sun Life & Health Ins. Co.*, 766 F. Supp. 2d 380, 386 (E.D.N.Y. 2011) (remand in ERISA action initiated by plaintiff after initial review and appeal of denial); *Grant v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 109-CV-1848-RWS, 2010 WL 3749197, at *2 (N.D. Ga. Sept. 21, 2010) (same); *Stiers v. AK Steel*

5

*Benefits Plans Admin. Comm.*, 2008 WL 1924252, \*6 (S.D. Ohio Apr. 30, 2008) (same).

Accordingly, the procedures for an initial claim review set out in 29 C.F.R. 2560.503-1(f)(3) apply.

As a result, the Court concludes that Chalk's motion to reopen was filed prematurely.

ERISA regulations require a plan's claims administrator to notify the claimant of an adverse benefit determination within forty-five (45) days of receiving a claim for disability benefits. 29 C.F.R. § 2560.503–1(f)(3). If the claim administrator fails to provide a determination within this time limit, the claimant is "deemed to have exhausted" her administrative remedies and can bring suit for any of the remedies made available under 29 U.S.C. § 1132(a). 29 C.F.R. § 2560.503–1(l).

> However, the 45-day deadline is subject to two potential 30-day extensions:

> This period may be extended by the plan for up to 30 days, provided that the plan administrator both determines that such an extension is necessary due to matters beyond the control of the plan and notifies the claimant, prior to the expiration of the initial 45–day period, of the circumstances requiring the extension of time and the date by which the plan expects to render a decision. If, prior to the end of the first 30–day extension period, the administrator determines that, due to matters beyond the control of the plan, a decision cannot be rendered within that extension period, the period for making the determination may be extended for up to an additional 30 days, provided that the plan administrator notifies the claimant, prior to the expiration of the first 30–day extension period, of the circumstances requiring the extension and the date as of which the plan expects to render a decision.

29 C.F.R. § 2560.503–1(f)(3). Accordingly, prior to both the expiration of the initial 45-day period, December 11, 2025, and the expiration of the first 30-day extension, January 10, 2026, LINA was required to notify Chalk "of the circumstances requiring the extension of time and the date by which [LINA] expects to render a decision." *Id.* In each case, the regulations require that

> the notice of extension shall specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues, and the claimant shall be afforded at least 45 days within which to provide the specified information.

*Id.*

The record shows that Lina was entitled to both 30-day extensions. In this case, LINA requested an IME on December 8, 2025, three days before the 45-day deadline. [DE 30-3 at 302]. As required by regulations, the letter provided the standards on which entitlement to a benefit is based ("to be entitled to LTD benefits, medical documentation is required which supports that your client is Disabled from performing the duties of their own occupation") and the unresolved issues that prevent a decision on the claim ("Please understand that we need this information to determine your client's functional ability, and whether they qualify for benefits as defined under the policy."). [*Id.*]. LINA instructed Chalk that it would "notify [her] immediately once [LINA] determined if [she] qualif[ied] for Disability benefits" or "[a]t the latest. . . within 30 days." [*Id.* at 303]. As a result, even if LINA had not issued the claim decision within the required deadline, Chalk's motion to reopen, filed on December 16, 2025, was premature.

Next, on January 6, 2026, four days before the expiration of the first 30-day extension, LINA notified Plaintiff that the IME was scheduled for January 22, 2026. [DE 30-4]. Likewise, that letter expressed that LINA "needed additional information before a decision could be made." [*Id.* at 395]. The letter further explained that "to be entitled to LTD benefits, medical documentation is required which supports that [Chalk] is Disabled from performing the duties of their own occupation. Participation in an IME may help [LINA] clarify [Chalk's] functional abilities and determine whether they qualify for Disability benefits." [*Id.*]. Thereafter, Chalk received LINA's determination of her LTD claim on February 6, 2026, well before the deadline ran under the ERISA claims-procedure regulations.

Accordingly, Chalk's LTD claim remains properly before LINA on administrative review, consistent with the terms of the LTD Policy and all applicable ERISA requirements. For the avoidance of doubt, Chalk must exhaust her administrative appeal before reopening this case. In the interest of fairness, however, the Court will permit Chalk 180 days from this Order to file her appeal, though she may of course proceed sooner.

## B. Attorney's Fees and Costs

In the Court's order remanding this matter to LINA, the Court observed that "it appears that Chalk is eligible to receive a fee award because she has achieved some degree of success on the merits by virtue of the remand order." [DE 17 at 190]. However, because Chalk made the request for fees in her opposition to LINA's motion to remand, the Court ordered that Chalk file a separate motion so that the matter could be fully briefed by the parties. [*Id.* at 190–92]. Chalk now moves the Court to award her "attorneys' fees of $20,921 and costs of $450.37." [DE 24 at 213].

Before the Court may award attorney's fees under ERISA, the party seeking fees must establish that he or she is eligible to receive fees and costs because he or she "achieved some degree of success on the merits." *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 245 (2010). If the movant establishes they are eligible for a fee award, the Court applies the *King* factors to determine whether fees and costs are appropriate. *See Geiger v. Pfizer, Inc.*, 549 F. App'x 335, 338 (6th Cir. 2013) (quoting *Sec'y of Dep't of Lab. v. King*, 775 F.2d 666, 669 (6th Cir. 1985)).

### 1. Success on the Merits

Courts have consistently found that claimants "achieved some degree of success" with a remand for further consideration when they "persuaded the District Court to find that the plan administrator has failed to comply with the ERISA guidelines" or obtained some other comment

8

on the merits. *Hardt*, 560 U.S. at 245 (rejecting argument that remand could never constitute "success" because, "given the facts of [that] case," the claimant had persuaded the district court of ERISA violations). *See also McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 547 (6th Cir. 2011) (finding "some degree of success" because the claimant had achieved the remand by persuading the district court of ERISA violations).

Chalk claims that this requirement is easily satisfied where, as here, the Court found that LINA "clearly failed to comply with ERISA's initial-notice requirement insofar as it never notified her regarding its 'decision' on her LTD claim" and remanded the case for "a full and fair review" of her LTD claim. [DE 17 at 187, 189]. LINA disagrees, arguing that this case is different because, here, it was LINA—not Chalk—who moved to remand the case for a full and fair review. [*See* DE 26 at 308 ("The only 'success' [Chalk] claims her attorneys should be compensated for was fully and solely achieved by counsel for [LINA] over [Chalk's] opposition.")]. This argument is not without merit. Indeed, as LINA notes, Chalk opposed the very relief she now seeks fees for achieving:

> [A]t the very outset of the litigation and before a responsive pleading was even filed, Plaintiff was offered the only relief she received in this case—a remand. Rather than accept the remand to have LINA administer her [LTD] claim in accordance with her employer's policy, she chose to actively oppose any remand. Ultimately, the Court agreed with LINA that what Plaintiff was entitled to receive was the relief she could have had without expending any fees, and without any of the time spent by both sides and by the Court. Plaintiff's opposition resulted in delay in the administration of her LTD claim and fees expended by both parties to the litigation.

[*Id.*].

Nevertheless, the Court cannot ignore that the remand was only offered by LINA as a result of the litigation Chalk initiated by and through her counsel. Just as in *McKay*, Chalk "'persuaded the [] Court to find that [LINA] . . . failed to comply with the ERISA guidelines' and that, as a

9

result, [s]he 'did not get the kind of review to which [she] was entitled under the applicable law.'"

428 F. App'x at 547. Even though Chalk may not ultimately receive the relief she requested when

filing this lawsuit, she has still seen some success on the merits. Accordingly, the Court must

determine whether and to what extent fees and costs are appropriate in light of the *King* factors.

2. King *Factors*

The Sixth Circuit examines the following "*King* factors" to determine whether a district

court properly exercised its discretion in awarding attorney fees under § 1132(g)(1):

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing
> party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an
> award on other persons under similar circumstances; (4) whether the party
> requesting fees sought to confer a common benefit on all participants and
> beneficiaries of an ERISA plan or resolve significant legal questions regarding
> ERISA; and (5) the relative merits of the parties' positions.

*Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir.2006) (per curium, citing *King*, 775

F.2d at 669). This review is deferential: "an abuse of discretion exists only when the court has the

definite and firm conviction that the district court made a clear error of judgment in its conclusion

upon weighing relevant factors." *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 939 (6th Cir.

1996) (quoting *King,* 775 F.2d at 669). "No single factor is determinative, and thus, the district

court must consider each factor before exercising its discretion" on the issue of attorney fees.

*Moon*, 461 F.3d at 642–43.

In analyzing these factors, the Court finds the Sixth Circuit's opinion in *Shelby Cnty.*

*Health Care Corp. v. Majestic Star Casino* particularly helpful. 581 F.3d 355, 376–77 (6th Cir.

2009). In *Majestic Star*, a plan participant challenged Majestic's denial of a claim for medical

expenses resulting from a car accident. The district court found that Majestic had wrongly denied

the claim on the basis the participant was driving without a license and driving without insurance,

10

which Majestic erroneously interpreted as "constitut[ing] an 'illegal act'" for purposes of an exclusionary clause in the plan. 581 F.3d at 372. The Sixth Circuit affirmed the district court's award of benefits to the plaintiff but found the district court "abused its discretion in awarding attorney fees" based on its application of the *King* factors. *Id.* at 378.

As in this case, there was no dispute as to the second factor because the plan administrator was able to satisfy an award of attorney's fees. With respect to factor one, however, the Sixth Circuit held that Majestic's "erroneous interpretation of certain terms in its plan documents does not constitute culpable conduct for purposes of determining whether to award attorney fees." *Id.* at 377. Although the plan administrator had erred, it had not done so in bad faith. Consequently, the court found that "an award of attorney fees . . . would not have a 'deterrent effect . . . on other persons under similar circumstances" because other plan administrators were equally likely to incorrectly interpret a similar provision. *Id.* at 378. The fourth factor similarly weighed against an award because the record did not show any other participant in [Majestic]'s plan was in the same position as the plaintiff or that any other participant would obtain a redetermination of a similarly adverse benefits decision. *Id.* Finally, the district court noted that Majestic did not attempt to defend a decision taken in bad faith. *Id. (*observing that while some positions lacked merit, this factor did not weigh heavily in favor of an award).

Turning to the matter at hand, the Court finds that the *King* factors weigh in favor of denying a fee award.

As to the first factor, there is no evidence that LINA engaged in misconduct. Rather, the record shows that LINA's failure to comply with ERISA's notice requirements was due to a procedural mistake of one of its employees—in this case whichever employee failed to send Chalk's LTD claim form to the "LTD Team" upon receiving Chalk's "LTD claim form at the

11

intake email address," as required by LINA's internal procedures. [*See* DE 10 at 31]. Courts have denied fee awards in similar circumstances. *See, e.g.*, *Evans v. Metro. Life Ins. Co.*, No. 1:04 CV 44, 2005 WL 2100655, at \*3 (E.D. Tenn. Aug. 2, 2005) (differentiating between a "deliberate or bad faith attempt to deny benefits" and denials as the result of an "honest mistake" which, even if arbitrary and capricious, would not rise to the level of culpable conduct). At the same time, courts find that "[a] plan administrator acts with the requisite culpability where it 'engages in an inadequate review of the beneficiary's claim.'" *Majestic Star*, 581 F.3d at 377. Unlike the plan administrator in *Majestic Star* which engaged, albeit incorrectly, in a review of the participant's claim, LINA conducted no review at all. Although the Court finds no evidence of bad faith, it finds that the first factor weighs slightly in favor of Chalk. It is undisputed that the second factor, LINA's ability to pay, also favors Chalk.

However, the Court finds that an award of attorney's fees "would not necessarily deter other plan administrators" from unintentionally failing to comply with ERISA's notice requirements. *Majestic Star*, 581 F.3d at 378. *See also Foltice*, 98 F.3d at 937 ("Honest mistakes are bound to happen from time to time, and fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing."). There is nothing in the record to suggest that this case is the result of anything other than an employee's honest mistake. Likewise, the Court's remand order did not resolve a significant legal question regarding ERISA nor did it confer a common benefit on the participants and beneficiaries of LINA's LTD plan other than perhaps Chalk herself. *Majestic Star*, 581 F.3d at 378 ("Where a claimant seeks benefits only for himself, we generally have found the common-benefit factor to weigh against an attorney-fee award.") The third and fourth factors therefore weigh in favor of LINA.

12

The fifth factor, the relative merits of the parties' positions, also weigh in favor of LINA. Although Chalk did achieve some success by virtue of the remand order, LINA is correct that the Court sided with LINA's position on the merits. Nor did LINA "attempt[] to defend" its mistake to fail to comply with ERISA's notice requirement. *Majestic Star*, 581 F.3d at 378. Rather, "at the very outset of the litigation and before a responsive pleading was even filed," LINA offered a "remand to have LINA administer her [LTD] claim in accordance with her employer's policy." [DE 26 at 308, 310]. Indeed, the vast majority of the fees requested by Chalk are for her counsel times spent *after* LINA correctly requested the Court remand for a full and fair review. [*See* DE 24-1]. The Court notes that the purpose of fee-shifting under ERISA is to "enable pension claimants to obtain competent counsel and to distribute the economic burden of litigation in a fair manner." *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1304 (6th Cir. 1991) (citing *New York Cent. Teamsters Pension Fund*, 506 F.Supp. 180, 182 (W.D.N.Y.1980)). Here, it would be unfair to impose on LINA the economic burden of Chalk's opposition to its motion.

Accordingly, Chalk's request for attorney's fees is **DENIED**. However, since Chalk achieved some success on the merits, Chalk is eligible for costs in the amount of $450.37 which LINA does not dispute. [*See* DE at 328 n.9]. Chalk's request for costs is therefore **GRANTED**.

### III.    CONCLUSION

Accordingly, the Court, having considered the parties' motions and related filings and being otherwise sufficiently advised, **ORDERS** that:

1.    Chalk's Motion To Reopen and Establish Briefing Schedule [DE 25] is **DENIED**.

2.    Chalk's Motion for Attorneys' Fees and Costs [DE 24] is **GRANTED in part and DENIED in part**. Chalk's request for attorney's fees in the amount of **$20,921** is **DENIED.** Chalk request for costs in the amount of **$450.37** is **GRANTED**.

May 6, 2026                                    13

Rebecca Grady Jennings, District Judge
United States District Court